Frierson and Wife *vs.* Beall.

No. 74.—JAMES D. FRIERSON and Wife, plaintiffs in error, *vs.* NATHAN H. BEALL, executor, &c. of REBECCA BOSTWICK, deceased, defendant.

[1.] To the validity of a will of personal property, it is only necessary that it be made by, or according to, the directions of the deceased, and be in writing. It is not necessary that a will of personal property be witnessed, or written or signed by the testator; if drawn up according to his directions or approved by him, it may operate as a valid will.

[2.] The presumption of law is against every testamentary paper not actually *executed* by the testator. The presumption, however, thus raised is slight, and may be repelled by proof.

[3.] Where the testator's design of perfecting the paper is frustrated by sudden death, or insanity, or any other involuntary preventive cause, no inference of the absence of testamentary intention arises from the imperfect state of the document, which, notwithstanding its defect, will be accepted as the will of the deceased; provided the proof show clearly that it fully discloses the testamentary scheme of the testator.

[4.] Where the testator dies before the instrument is finished, it does not follow that, in all cases, the instrument will be established *as far as it goes.*

[5.] The rule in the case of every unfinished paper is this: Can the Court collect from *all* the circumstances of the case, that the document propounded contains the *final* wish and intention of the testator respecting the property thereby bequeathed? If so, it will be its duty to pronounce for it.

Probate of will, on appeal, in Clark Superior Court. Decided by Judge DOUGHERTY, August Term, 1849.

The question in this case arose upon a caveat filed to the following paper offered for probate, as to the second item:

"GEORGIA, CLARK COUNTY:

"In the name of God, amen: I, Rebecca Bostwick, being weak in body, but sound in mind, make this codicil to my last will and testament, to wit: that is to say, the property given in my will, heretofore executed to my sisters, Tabitha J. Groves and Eleanor Harris and Mary Hodges, and to my niece, Verlinda R. Burton, is to be given to my brother, Nathan H. Beall, in trust for their sole and separate use, during their lifetime, that is, respectively each, and not subject to the debts of their present or any future husband; but at the death of my said legatees, severally, they may bequeath the said legacies, together with any given in this codicil, to whomsoever they choose.

" Item 2. I will and bequeath to Miss Margaret Bostwick, one thousand dollars.

"Item. I will and bequeath my negro woman, Keziah, and—"

Upon the appeal in the Superior Court of Clark County, the questions, both of law and fact, were submitted to His Honor, Judge *Dougherty*.

The following evidence was submitted on behalf of the propounders, James D. Frierson and wife, (formerly Margaret Bostwick,) viz : the affidavit of James A. Groves, made before the Court of Ordinary of Clark County, 7th April, 1834, to the effect that on the 13th March, 1834, he was requested by Mrs. Bostwick to write a codicil to her will, which he immediately proceeded to do in compliance with her instructions, which she gave him orally, which is the paper offered for probate ; that her attention was required to a prescription of her physician, which arrested the execution of the codicil. As soon as she was disengaged, at her request, prayers were offered in her behalf by a clergyman present. Immediately afterwards the deponent approached her bedside. She was too much exhausted to resume the codicil. She died without completing it, in less than an hour after the writing was suspended. Deponent did not recollect the precise words of the bequest of the negro woman, Keziah, and her two children, and, therefore, deferred reducing it to writing until reiterated. Testatrix was of sound and disposing mind.

Also, the depositions of the same witness, sworn to August 2d, 1849, who testified that he wrote the codicil and made the foregoing affidavit; that he could not at this time say, that the codicil contained the precise words of Mrs. Bostwick, but presumed that it contained their substance. It was written at a time of considerable excitement in consequence of the sudden announcement of the rapidly approaching dissolution of the testatrix. Testatrix requested every person to retire except Mrs. Groves and witness. She then hastily told witness what to write as a codicil to her will, which, as soon as the implements for writing could be obtained, he did. He was interrupted by a request that he too should retire for a few moments, which he did, and pursued his writing in another room, until he came to a part where it was necessary to see testatrix again. In a few moments the door was opened, and witness with others rushed into the room, but

Mrs. B. was too far gone to resume the codicil, and died in less than an hour. The paper was not read over to the deceased.

The Court refused to order the paper to probate, and propounders excepted.

A new trial was moved, on the grounds that the decision was contrary to law and the evidence, and was refused; and to this decision propounders excepted.

CONE, HULL and COBB, for plaintiff in error.

C. PEEPLES, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This is a case of some nicety, as well as of some novelty, in our Courts. It is a single point, and depends on the testimony of a single witness.

Rebecca Bostwick died in 1834, and it is proposed to establish and admit to probate, the second item of the following paper, as a codicil to her will:

" GEORGIA, CLARK COUNTY :

" In the name of God, amen : I, Rebecca Bostwick, being weak in body, but sound in mind, make this codicil to my last will and testament, to wit : that is to say, the property given in my will heretofore executed, to my sisters, Tabitha Groves, and Eleanor Harris and Mary Hodges, and to my niece, Verlinda R. Burton, is to be given to my brother, Nathan H. Beall, in trust for their sole and separate use, during their lifetime, that is, respectively each, and not subject to the debts of their present or any future husband; but at the death of my said legatees severally, they may bequeath the said legacies, together with any given in this codicil, to whomsoever they choose.

" Item 2. I will and bequeath to Miss Margaret Bostwick one thousand dollars.

Item. I will and bequeath my negro woman, Keziah, and"—

The application is resisted upon the ground, that the paper propounded is unfinished, and does not disclose the entire testamentary scheme of the deceased.

James Groves, the only witness in the case, swears, that on the 13th day of March, 1834, Mrs. Bostwick, being apprised

Frierson and Wife *vs.* Beall.

that her dissolution was at hand, and her attention being directed to the disposition of her property, she requested all the company to leave the room, except witness and his wife, which was done. Deponent was then requested by decedent to write a codicil to her will, which he proceeded to do, so soon as writing materials could be procured, and in compliance with the oral instructions which she then gave. Before the instrument was finished, he too was requested to retire, in order that some prescription might be administered. He continued writing in another room, until he came to a part where it became necessary for him to see the testatrix again before he could complete the paper. In a few moments the door was opened, and the company being re-admitted, prayer was offered up by the officiating clergyman present, in behalf of the patient, and at her request. Deponent then approached her bed-side, but found her too much exhausted to resume the business. Nothing more was said about it, and she died in about one hour after the writing was first suspended. Witness farther testified, that the only matter about which his memory was at fault was, as to the disposition of the negro woman, Keziah, and her children, and that he postponed finishing the paper until he could have the wishes of the testatrix reiterated as to them. He recollects that the family of slaves were bequeathed to Verlinda R. Burton, but he thinks she was to take them at valuation in part of her share of the estate.

[1.] I would remark, that to the validity of a will of personal property, it is only necessary that it be made by, and according to, the directions of the deceased, and be in writing. It is not necessary that it be witnessed, or written or signed by the testator; if drawn up according to his directions, and approved by him, it may operate as a valid will. 2 *Black. Com.* 501.

[2.] The presumption of law is against every testamentary paper not actually *executed* by the testator, and *so* executed as it is to be inferred on the face of the paper, that the testator *meant* to execute it; but if the paper be complete in all other respects, that presumption is slight and feeble, and one comparatively easily repelled ; for *intentions sub modo*, at least, need not be *proved* in the case—that is, the Court will *presume* the testator's intention to *be* as expressed in *such* a paper, on its being satisfactorily shown, that its not being executed may be justly ascribed to some *other* cause, and not to any *abandonment* of those *intentions*, so

expressed on his, the testator's, part. But where a paper is un-
finished, as well as unexecuted, (especially where it is just be-
gun, and contains only a few clauses or bequests,) not only must
its being unfinished and unexecuted be accounted for as above,
but it must be also *proved*, (for the Court will not *presume* it,) to
express the testator's intentions, in order to repel the legal pre-
sumption against its validity.

[3.] It must be *clearly made to appear*, upon a just view of *all*
the facts and circumstances of the case, that the deceased had
come to a *final* resolution in respect to it *as far as it goes;* so
that by establishing it, even in such its imperfect state, the Court
will give effect to, and not thwart or defeat, the testator's real
wishes and intentions in respect to the property which it purports
to bequeath, in order to entitle such a paper to probate. 2 *Ad-
ams*, 354.

Before applying these general principles, which I take to be
sound law, to the facts of this case as they are stated in the re-
cord, I would observe, that the presumption of law is against
this instrument, from its very *form;* that this presumption must
be repelled by *proof*, and that the task of repelling it, the *onus
probandi*, in the case of this, as of every imperfect paper rests,
it need scarcely be observed, upon the party setting it up.

The only inquiry then is, has the propounder offered satisfac-
tory testimony to show that *this* paper, as to the *second* item of it,
notwithstanding it is incomplete as a whole, contains, neverthe-
less, the *last will or final disposition* of the testatrix, respecting
the legacy of a thousand dollars to her niece, Mrs. Frierson, and
that no inference of the absence of matured testamentary inten-
tion arises in this case, from the imperfect state of the document,
it being clearly established, that the testatrix's design was finished
as to *this* clause, and that the only reason why the paper was not
perfected was, that it was frustrated by her sudden death, and the
religious service preparatory thereto, which intervened?

The question of *law* upon the *proof* is one of so little doubt or
difficulty, that I am deterred from entering into any elaborate
discussion of it. The evidence, I conceive, comes fully up to the
rule, even as contended for with so much ability by the learned
counsel for the defendant in error, namely, that the paper pro-
pounded should disclose the whole testamentary scheme of the
deceased. The witness deposes, that *all* the instructions of the

testatrix were communicated ; that he commenced reducing them to writing, and was only prevented from finishing the instrument on account of his forgetfulness or uncertainty as to the terms upon which Keziah and her children were given to another legatee.    There could then have been nothing behind—nothing left undone as to the previous pecuniary bequest to Margaret Bostwick.    Had the scrivener began to write, as he was dictated to, and the work been arrested in its progress by the sudden death of the testatrix, the case might have been different.

[4.] For the proposition is not true, in all of its broad extent, that if a testator dies while the instrument is in progress, that instrument, *as far as it goes,* be its contents and effect what they may, must be valid.    No such principle is to be deduced from the authorities.

[5.] The rule, I repeat, is this : can the Court infer that by pronouncing for the paper, it will carry into effect what it collects, from *all* the circumstances of the case, to have been the deceased's wish ?  Here there can be no doubt, for her directions were *all* communicated, and there was nothing more to be done, so far as this legacy was concerned.    There is no danger, therefore, that in pronouncing for this item of the codicil, that the Court will defeat or counteract, instead of giving effect to the wish of the deceased.    Common justice, then, requires that it should be established and admitted to probate, and so this Court orders and adjudges.