**CROW, ESTATE OF, In re**

Probate Court, Montgomery Co.

Decided January 22, 1940.

Heald & Machle, Dayton, for executrix.

Pickrel, Schaeffer, Harshman, Young & Ebeling, Dayton, for heirs.

## OPINION

By WISEMAN, J.

This matter comes on to be heard on the application to probate an instrument alleged to be the last will and testament of Rebecca E. Crowe, who died November 1, 1939, which in its entirety is as follows:

LAST WILL AND TESTAMENT OF REBECCA E. CROWE.

Be it remembered that I, Rebecca E. Crowe of the city of Dayton, Montgomery County, Ohio, being of sound and disposing mind and memory and considering the uncertainty of life, do make, publish and declare this to be my last Will and Testament, hereby revoking all former Wills and Codicils whatsoever by me made.

ITEM I. I direct that all my debts and funeral expenses be paid as soon as practicable after my decease.

ITEM II. In case I have not already done so or contracted therefor I direct the executrix place a headstone not

to cost more than a Thousand Dollars ($1,000).

ITEM III. All the rest, residue and remainder of the property of whatever kind or nature, whether real, personal or mixed, and wheresoever situate, of which I may own or have the right to dispose of at the time of my death, I give, devise and bequeath to

. (Here appears a blank space. The end of Item III is about three inches above the bottom of the first page. Item IV begins on the reverse side at about one and one-half inches below the top of the page).

ITEM IV. I make, nominate and appoint Mrs. Easter Ritter of Dayton, Ohio to be executrix of this my last will and Testament, and I request that absolutely no bond be required of her as such, hereby authorizing and empowering my said executrix to compound, compromise, settle and adjust all claims and demands in favor of or against my estate; and to sell at private or public sale, at such prices and upon such terms of credit or otherwise as she may deem best the whole or any part of my real or personal property and to execute acknowledge and to deliver deeds and other proper instruments of conveyance, therefore to the purchaser or purchasers. No purchaser from my said executrix need see to the application of the purchase money to or for the purposes of the trust; the receipt of my executrix shall be a complete discharge and acquittance thereof.

IN TESTIMONY WHEREOF, I have hereunto set my hand and seal this

Rebecca E. Crowe.

' Signed and acknowledged by the said Rebecca E. Crowe, to be her Last Will and Testament before us and in our presence, and by us signed as attesting witnesses in her presence, at her request, and in the presence of each other, this 26th day of December, 1938.

Harry McClellan residing at 923 Superior Ave.

Ernest B. Baldridge residing at 912 Five Oaks Ave.

The heirs oppose the probate of this instrument as a will, contending that it is not dispositive, and not complete on its face.

The court is not satisfied to rest the issue- as to whether the instrument is dispositive in character, on item two in which the testatrix directs the executrix to expend $1,000 for headstone. The dispositive character of this item not being free from doubt, the court would rather search for and apply the fundamental principle of law applicable thereto.

While the belief that an instrument must be dispositive in character to be a valid will has been accepted as the law in Ohio, no case has been dicided by a court of superior jurisdiction which flatly determined this question. In the case of In re Williamson, 5 N. P. 1, (1897), the probate judge for Hamilton county held that an instrument which was not dispositive could not be probated as a valid will. This ruling was reversed by the Common Pleas Court in 8 O. D. 47 (1898), wherein the court ordered the instrument to be probated as a will on the ground that the testator intended the instrument to be a will. In the case of **Moon v Harness, 15 C. C. N. S. 139** (1912), it was held that an instrument which contained a provision declaring his two granddaughters to be "each equal heirs with my own children," was dispositive in character. Having held the instrument to be dispositive in character, the court did not definitely decide that an instrument is required to be dispositive in character. In the case of **Holmden v Craig, 16 C. C. N. S. 157** (1913), which was an action to quiet title, the court in its opinion states:

"All definitions of a will include the idea that it is a means of disposing of property, to take effect at the death of the testator. We must bear in mind that a will always disposes of property. It is clear, therefore, that a written instrument in the form of a will which makes no disposition of property is not a will."

Upon an examination of this opinion it will be observed that this language

was largely **obiter dictum,** inasmuch as the will in question was dispositive in character. These cases lend little or no assistance to this court in determining the issue herein presented. The case at bar becomes one of first impression under the Probate Code as we find no reported case since 1932 in which this issue has been decided.

The heirs contend that an instrument which does not dispose of property is not a will, and cite in support thereof the following cases: **Bailey v Bailey, 8 Ohio 239; Crane v Doty, 1 Oh St 279; Baker v Baker, 51 Oh St 217; Moon, Admr. v Stewart, 87 Oh St 349; Tax Commission v Parker, 117 Oh St 215.**

In the authorities just cited, the courts have defined a will to be an instrument in which a person disposes of property to take effect after his death. In each of these cases is found language similar to that used by our Supreme Court in the case of Tax Commission v Parker, **supra,** as follows:

" 'A will is commonly defined as any instrument executed with the formalities of law, whereby a person makes a disposition of his property to take effect after his death.' 28 Ruling Case Law, 58, Section 2.

" 'A will is a disposition of property to take effect on or after the death of the owner.' 40 Cyc., 995.

" 'A written instrument, legally executed, by which a man makes disposition of his estate, to take effect after his death.' Webster."

While we find no case in Ohio, there are cases in other jurisdictions holding that if the instrument merely provides for the revocation of former wills, the payment of debts, and the naming of a person as executor, it will be sustained as a will even though it does not dispose of property.

In 41 O. Jur., page 266, is found the following statement: "It is well settled that an instrument naming an executor may be a valid will." In the note, a reference is made to 28 R. C. L. page 58, wherein it is stated:

"A will is commonly defined as any instrument executed with the formalities of law, whereby a person makes a disposition of his property to take effect after his death. The disposition of property is not an essential characteristic of a will, and an instrument simply nominating an executor may be a will. In fact it is not uncommon for a testator to make his will for the sole purpose of nominating an executor to administer his estate." (Cases cited).

In 34 L. R. A. (N.S.) 968, is found a note reading as follows:

"It is familar law that a will which merely appoints an executor is entitled to probate, and numerous cases where the probate is opposed on the ground that some of the clauses of the instrument are invalid, are disposed of by the court pointing out that the instrument has at least some valid clauses, as appointing an executor," etc. (Cases cited).

See also: 37 L. R. A. (N.S.) 1148, and cases cited.

In Thompson on Wills (2d Ed.) page 18, it is stated:

"It is generally held, however, that the disposition of property is not an essential characteristic of a will, but that a valid will may be made for the sole purpose of appointing an executor." (Cases cited).

In Page on Wills (2d Ed.) Vol. 1, it is stated that an instrument which provides for the appointment of an executor or of a guardian for minor children will be sustained as a valid will. See also Schouler on Wills (2d Ed.) page 312.

The court finds the rule in most jurisdictions to be that an instrument which does not dispose of property, but which only appoints an executor, is a valid will. While we find no case in which the court expressly rests its decision on the provisions of the statute which specifies who may make a will, yet it is clearly the law that the ques-

tion as to who may make a will and the manner in which it is executed, is controlled entirely by statute. It is true that the courts in Ohio have defined a will to be an instrument which disposes of property to take effect after death. This definition only describes the general characteristics of the instrument. A definition is usually couched in general terms. It will be observed that all of the Ohio decisions which have been cited to sustain the proposition that the instrument must be dispositive in character to be a valid will, were rendered prior to 1932. Beginning with the early act of 1805, including numerous amendments thereto, down to the last provision of the code prior to the passage of the Probate Code, the section which specified who could make a will contained a provision relative to the disposition of property. Section 5914 revised statutes, which was passed in 1878, provided:

"Any person of full age and of sound mind and memory, and not under any restraint, having any property, personal or real, or any interest therein, may give and bequeath the same to any person by last will and testament lawfully executed."

**Sec. 10503, GC, provided:**

"A person of full age, of sound mind and memory and not under restraint, who has property, or an interest therein, may give and bequeath it by last will and testament lawfully executed."

Thus it will be observed that the definition of a will approved by the courts in Ohio prior to 1932, was in harmony with the express provisions of the statute. The provisions of the statute on the subject prior to 1932 gave rise to the general understanding, which was the correct one, that an instrument must dispose of property to be a valid will.

On January 1, 1932, §10504-2, GC, became effective, which provides:

"A person of full age, of sound mind and memory, and not under restraint, may make a will."

The committee which drafted this section makes this comment: "This section is similar to former §10503, GC, but eliminates the requirement of that section that a person must have property or an interest therein in order to make a will." Undoubtedly. it was the intention of the legislature in the enactment of this statute to permit any person to make a valid will even though not the owner of property. It logically follows that, if a person not the owner of property may make a valid will, an instrument which in every other respect is properly executed may be found to be a valid will even though it does not dispose of property. Apparently, in eliminating from the statute the requirement relative to the ownership of property, it was the intention of the legislature to harmonize our statutory law with the great weight of authority which permits an instrument to be probated as a valid will which only provides for the appointment of an executor or a guardian for minor children.

The court concludes that under the provisions of §10504-2, GC, an instrument which fulfills all other statutory requirements relative to the execution of wills, may be probated as a valid will even though it does not dispose of property.

The heirs contend that the instrument is not complete on its face, and therefore is not a valid will. In Item III, which is the residuary clause, the testatrix fails to name a beneficiary. The item ends with an unfinished sentence, after which appears a blank space which could have been filled in to complete the residuary clause. No attempt was ever made to complete this part of the instrument. It is contended that since the instrument is incomplete on its face, the testatrix intended to do some further act to complete it, and that therefore she did not regard the instrument as her last will and testament.

In order to probate this instrument as a will, the court must find that it was executed **animo testandi**. The animus testandi turns on the intention of the testatrix as shown by the nature of the instrument and the surrounding facts and circumstances. It is the **animus testandi** existing when the instrument is executed that makes it a will. The intent must apply to the particular instrument, in the condition it was when executed. The **animus testandi** may under certain conditions be implied. When the **animus testandi** is established, the character of the instrument is fixed and it should be probated as a valid will if other statutory requirements as to form and execution have been complied with. The burden of proving the intention of the testatrix rests upon the proponents. 28 R. C. L. 59; 40 O. Jur. 264; Thompson on Wills (2d Ed.) page 20.

It is conceded that testatrix was of full age, of sound mind and memory and not under restraint, at the time she signed the instrument, and that all statutory requirements as to execution and attestation were complied with. The evidence shows that testatrix was an intelligent woman, seventy-two years of age, and mentally alert. There is evidence indicating that she personally prepared the instrument. She announced to one of the subscribing witnesses, sometime prior to its execution, that she intended to make a will and that she would call him to act as a witness as soon as it was ready for execution. On the day of its execution, she called the two subscribing witnesses to her home and stated to them that she had made out her will and wanted two younger men of her acquaintance to act as witnesses, and asked the two subscribing witnesses whether they would do so. They consented to act as witnesses, whereupon the instrument was executed. No statement was made with respect to its contents or provisions. The instrument was executed almost one year prior to her death, and there is no evidence to indicate that the testatrix either changed or attempted to change the instrument in any particular, subsequent to its execution.

Do these facts show that the testatrix executed the instrument **animo testandi**? Did she intend to perform some further act to complete the instrument? The presumption is against probating an instrument as a will, which is incomplete. In 68 Corpus Juris, 638, the rule is stated as follows:

"An instrument may be so incomplete and unfinished that courts will not declare it to be a will. The presumption is against an incomplete and unfinished will, some cases holding that an instrument is not a will where the testator intended some further act to complete it. To be effective as a will, the instrument must appear to be so far complete as to have left no part of the testator's intention unexpressed."

On the other hand, it has been held that under a similar state of facts a presumption exists that the testator executed the instrument **animo testandi**. In Page on Wills, (2d Ed.) 73, is found this statement:

"If a testator, of sound mind and memory and not under restraint, knows that the instrument is a will, and has an opportunity of learning its contents, as where the will has been in his possession before execution, it will be presumed, in the absence of evidence tending to show mistake, fraud, and the like, that he was acquainted with its contents, and that he executed the instrument with the intention that it should operate as his will." (Cases cited).

On page 74 is found this statement:

"It has been held that a like presumption arises where testator has possession of the will for a considerable period of time after its execution, and refrains from revoking it." (Cases cited).

In Thompson on Wills, page 132, the rule is stated as follows:

"It must be clearly made to appear, upon a just view of all the facts and circumstances of the case, that the testator had come to a final resolution in respect to it as far as it goes. But if the paper be complete in all other respects, the presumption against the instrument is slight and feeble and one comparatively easily repelled."

The fact that clauses in an instrument are ineffective to pass property, or that certain provisions are void because of being against public policy, or that the greater portion of the testator's property passes under the intestate laws because of the incompleteness of the instrument, does not forbid its probate as a valid will. In a proceeding to probate a will, the court does not examine its contents for the purpose of construing its provisions or to distinguish between valid or void dispositions. Its provisions are examined only for the purpose of determining the testamentary character of the instrument. If the will be properly executed and proved, it must be admitted to probate although it contain not a single provision capable of execution or valid under the law. This is the universal doctrine both in this country and in England. 34 L. R. A. (N.S.) page 970; Conoway v Fulmer, 172 Ala. 283, 54 So. 624; Prater v Whittle, 16 S. C. 40; In Matter of Davis, 182 N. Y. 468, 75 N. E. 530; Byers v Hoppe, 61 Md. 206; **In re Will of Schrader, 20 O. N. P. N. S. 433; Mears v Mears, 15 Oh St 90.**

A clear line of distinction between those cases which reject and those which uphold an incomplete instrument as a valid will, is not easily drawn. The **animus testandi** rests on delicate scales, which yield readily upon the slightest change in circumstances. This line of distincton may be determined more clearly by a review of a few of the cases, which discloses that the incompleteness of the instrument alone is not a sufficient cause to refuse it probate. The test is whether the incom-

plete instrument expresses the final testamentary purpose of the testator.

In the case of Orgain v Irvine, 100 Tenn. 193, 43 S. W. 768, it was held:

"An adverse presumption arises against an incomplete or unexecuted will which has greater or less weight according to the condition of the paper."

In Tabler v Tabler, 62 Md. 601, the testator, who was in a dying condition, undertook to dictate his will to an amanuensis, and while his dictation was in progress his mind gave way before he had time to complete it. The court refused to admit the will to probate on the ground that the facts showed that the testator did not have time to complete what he evidently deemed an important part of the instrument.

In Patten v Pinkney, 50 Fed. (2d) 989, 60 App. D. C. 224, the testratrix used two sheets of paper tacked together, the first sheet containing eight separate bequests to various persons of specified sums of money, the amounts of which were set down in figures only. The testimony of the witnesses to the will was that at the time the will was executed the amounts of the different legacies were not set down, but that blank spaces were left in the will where the amounts of the legacies were intended to be added afterwards, and that the testatrix said she would fill in the amounts later, which she did a few weeks later. The court refused to admit the will to probate on the ground that the instrument when signed by the testatrix was not complete and was not her last testamentary act.

In the case of In Matter of Pierson, 197 N. Y. S. 312, 203 App Div. 673, wherein the will was written on note paper with lead pencil and showed a number of unexplained erasures, and on its face showed it was not finished, bearing every indication of being a memorandum made preparatory to writing a will, the court refused to probate the instrument on the ground that it did not fully express the intention of the decedent.

On the other hand, there is a line of authorities which holds that if the instrument although incomplete when it was executed is found to be the final expression of the testator's testamentary purpose, it should be probated as a valid will.

The rule is stated in 68 Corpus Juris 638 as follows:

"On the other hand, an incomplete or unfinished instrument has been held to be operative so far as it goes, where the provisions written are complete and embody the last intention of the testator, and the failure to finish the will is not due to a change of mind or desire to abandon it. An instrument known to be the beginning of the draft of a will may nevertheless be given effect if it is shown that the testator adopted such paper as the final expression of his testamentary purpose."

In Frierson v Beall, 7 Ga. 438, the testatrix during the writing of her will became exhausted and died within the hour without having completed the instrument. In that instrument there appears an incomplete bequest as follows: "I will and bequeath my negro woman, Keziah and —." The court held the instrument to be a valid will with respect to personal property and held:

"The rule in the case of every unfinished paper is this: Can the court collect from all the circumstances of the case, that the document propounded contains the final wish and intention of the testator respecting the property thereby bequeathed? If so, it will be its duty to pronounce for it."

In Mealing v Pace, 14 Ga., 596, the court held:

"To make a testamentary paper valid, the writer must have intended it to operate as a will, as it stood, without any further act, on his part, to complete it."

In Kultz v Jaeger, 29 App. D. C. 300, wherein the facts bear a striking similarity to the facts in the case at bar, the will was found to be properly executed but in the residuary clause the names of the beneficiaries were omitted. The court admitted the will to probate, and on page 310 say:

"Appellant's counsel insists that the alleged will should be held to be an incomplete testamentary paper because as it is written it is meaningless and because the names of the residuary devisees and legatees were never inserted in the blank spaces intended for such names; that on its face it shows that this was never a final and complete testamentary paper. A paper may not operate as a will disposing of property, and yet it may be good as a testamentary appointment of an executor, and therefore be admitted to probate if, looking at the entire paper, it is clear the paper was executed animo testandi. Lungren v Swartzwelder, 44 Md. 491.

"* * * Whether the devises or bequests or any of them, be invalid or in part ineffective, we may not upon these issues inquire. The formal paper contains the blanks where the names of the residuary beneficiaries should appear, but the omissions do not determine that the testatrix did not intend the paper, as it stood, to be her will. On the contrary, it is a complete and finished paper, executed and published animo testandi without anything further to be done in order to prove it. These omissions alone do not make it an invalid will."

In the case of In re Goodridge, 119 Me. 371, 111 Atl. 425, the court probated the instrument notwithstanding that certain blanks were not filled out, and on page 376 say:

"The blanks left for the names of those it provided should take her property after the death of her husband were not filled in except in the case of her mother. It is for this reason it is urged that it was not a complete instrument, and hence should not be re-

ceived as a will. We are of the opinion, however, that the instrument as it stands was executed by her as her last will and testament. Her husband testified that after talking it over they decided it was unnecessary to fill in the other blanks.

"Upon the proper construction of the provisions of the will we express no opinion, but having executed it as her will, the failure to fill in the blanks left in it will not defeat it. Schouler on Wills, Vol. 1, page 363; Harris v Pue, Admr., 39 Md. 548; Kultz v·Jaeger, 29 App Cases (D. C.), 300; Everett v Carr, 59. Maine, 325."

In Harris v Pue, 39 Md. 535, a paper which. purported to be a testamentary disposition of personal property was written at the request of the testator, signed by him and kept in his possession, and after his death was found in the place where his wife had put it under his instructions. He directed that after his death and that of his wife, his estate should be distributed to numerous persons, the sum of money set out after each name. Three persons named had no specific sum annexed to their names, but a blank space was left after each name. The draftsman called his attention to this omission, whereupon he stated: "That could be done at any time." The court held:

"The paper writing was properly admitted to probate as a valid will; the the existence of the blanks did not defeat the will, although the particular bequests being in blank, they failed for uncertainty; the other bequests being clearly expressed and being in no manner connected with or dependent upon those in blank, would have effect, it being the manifest intention of the deceased that the paper as it stood, should operate as his will."

On page 548 the court say:

"In this case the blanks have no significance or effect, except as some evidence tending to show that the deceased might have considered the paper as an unfinished and incomplete

act, and might not have intended it to operate as a will until the blanks were filled up.

"But the proof in our opinion clearly shows that the deceased intended the paper as it stood, to operate as his will. No doubt at the time he dictated the will, he had an undefined intention of filling the blanks with some specific sums before his death; but it is very evident from all the proof in the case, that 'he did not intend to die intestate, if the blanks were never filled'."

On page 549 the court say:

"And the further fact that the paper was kept unaltered in the safe custody of the deceased until his death; the conclusion is, in our judgment, irresistible that the deceased intended the paper as it stood to operate as his will; and that it was so regarded by the appellant."

In Guthrie v Owen, 2 Humphr. (Tenn.) 202, 36 Am. D. 311, the testator in his last sickness, the day before his death, requested a neighbor to assist him in preparing his will. For many years he was unable to speak or write, and conveyed his thoughs to draftsmen through the use of a dictionary. The written provisions were read to him, and he signified his assent by nodding. Late in the evening he grew sick and instructed the draftsman to return the next day to finish the instrument. On the next day when the draftsman returned the testator was out of his mind, and died shortly thereafter. The instrument was sustained as a valid will as to personal property on the ground that it expressed the will of testator as far as it had gone, in order to give effect to, and not thwart or defeat, the testator's real wishes and intention.

In Merrill v Boal, 47 R. I. 274, 132 Atl. 721, 45 A. L. R. 830, the court held:

"When a person of testamentary capacity, acting on his own free will, intentionally executes, with the formalities required by statute, a writing which in form and substance is testamentary, animus testandi is presumed."

It is urged that in the case at bar the testatrix must have intended to perform a further act of inserting the names of the beneficiaries in the residuary clause, rather than permit a large portion of her estate to pass under the intestate laws. Probably, the testatrix had a definite purpose in omitting the names of the beneficiaries in the residuary clause. In the case of In re Hickman, 101 Cal. 609, 36 Pac. 118, the court on page 613 held:

"It may often occur that, subject to the payment of his just debts, a testator is quite willing that his property shall be succeeded to as provided by law, while the selection of the minister through whom the settlement is to be made and the distribution is to be had is not only a matter of deep interest to him, but of vital interest to the estate; and as the law accords to him the privilege of making the selection of his executor, it must be upheld when duly made. * * *

"The fact that the document purported to appoint an executor, and provided for the payment of debts, was sufficient to stamp it as a will, and justify its probate as such."

In the case at bar, the testatrix had full knowledge of the ▇▇▇▇▇▇ provisions of the instrument and the omission of the names of the beneficiaries in the residuary clause, and is presumed to know the legal effect of her act. In 28 R. C. L. 233, this legal principle is stated as follows:

"And in general it may be said that a testator is presumed to have known the legal consequences of his will."

In the footnote, reference is made to Couch v Eastham, 69 W. Va. 710, 73 S. E. 314, 39 L. R. C. (N.S.) 307; Glover v Glover, 108 Ore. 61, 215 Pac. 990.

After an examination of the two lines of authorities, we find the rule to be: An incomplete instrument may be probated as a valid will if ▇▇▇▇▇▇ the court finds from the evidence that the testator, at the time of the execution of the instrument, adopted the incomplete instrument as the last expression of his testamentary purpose.

In the case at bar, the evidence shows that the testatrix informed one of the subscribing witnesses that she intended to make a will and that she would call him to act as a witness as soon as it was ready; that she did call the two subscribing witnesses and stated to them that she had made out her will; no statement was made by the testatrix indicating that her mind was not made up; no attempt was made to fill in the blanks after the instrument was executed. All the evidence points to the conclusion that at the time the instrument was executed, the testatrix intended the incomplete instrument to be the final expression of her testamentary purpose. Had she filled up the blank space after the execution of the instrument, the conclusion may have been drawn that she did not execute the instrument **animo testandi**; the reverse is equally true; not having changed the instrument after its execution, the conclusion may properly be drawn that she executed the instrument **animo testandi.**

The court finds that the evidence is sufficient to place this ▇▇▇▇▇▇ case in that line of authorities which upholds an incomplete instrument and orders it probated as a valid will.

The court orders the instrument to be admitted to probate.