[Cite as *Black v. Watson*, 2016-Ohio-1470.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103600**

**SHERRY BLACK**

PLAINTIFF-APPELLANT

vs.

**BONITA D. WATSON, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2015ADV195228

**BEFORE:** Jones, A.J., E.A. Gallagher, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** April 7, 2016

**ATTORNEYS FOR APPELLANT**

Natalie F. Grubb
Mark E. Owens
Grubb & Associates, L.P.A.
437 W. Lafayette Road, Suite 260-A
Medina, Ohio 44256


**ATTORNEY FOR APPELLEES**

David S. Riehl
3695 Center Road
Brunswick, Ohio 44212

LARRY A. JONES, SR., A.J.:

{¶1} Plaintiff-appellant Sherry Black appeals from the trial court's September 11, 2015 judgment granting defendant-appellee's, Bonita Watson, motion for summary judgment. We affirm.

## I. Factual Background and Procedural History

{¶2} Black was the only child of decedent Daniel Watson ("decedent"). Watson was decedent's wife, but not Black's mother. The record demonstrates that decedent and Black's mother divorced when Black was a toddler, and that in the 20 years preceding decedent's death he and Black maintained a cordial, but limited, relationship. They saw each other once or twice a year and spoke on the phone on their respective birthdays. Decedent never discussed any matters regarding his estate planning with Black.

{¶3} The record further demonstrates that Black and Watson had no relationship with one another. Black did not even know that decedent was married to Watson until after decedent's death; before that time, she only knew that they lived together.[1]

{¶4} The will at issue is a three-page document. Decedent signed on page two, which indicates that it was executed on March 25, 2003. Page three is the witness page, and it indicates that the will was executed on March 25, 1997. Under the will, decedent bequeathed his entire estate to Watson. The will further provided that upon Watson's death, the remaining estate would be divided equally between Black and Watson's son, defendant-appellee Chester

[1]Decedent and Watson married in 1994.

Pitkiewicz. Decedent had a 1997 will that was revoked by the 2003 will. Under the 1997 will, 75 percent of decedent's estate would have gone to Watson, and the remaining 25 percent would have gone to Black.

{¶5} Decedent passed away on July 3, 2013. In October 2013, Watson filed a copy of decedent's March 2003 will in probate court. Watson maintained that the original will was lost, but that the copy was a true and accurate duplicate of what had been executed. In January 2014, Black filed this will contest action against Watson and Pitkiewicz. Black contended that the will should not be admitted because it: (1) failed to demonstrate that it was observed by two witnesses as required under R.C. 2107.03; and (2) was executed as a "direct result of undue influence" exercised by Watson over decedent.

{¶6} In April 2015, Watson filed a motion for summary judgment, which Black opposed. On September 11, 2015, the trial court granted Watson's motion for summary judgment and dismissed Black's complaint in its entirety. Black now raises the following two assignments of error for our review:

> I. The trial court erred when it granted appellee's motion for summary judgment because there are genuine issues of material fact as to whether Bonita D. Watson exerted undue influence and there is a presumption of destruction when a will is lost.

> II. The trial court erred when it ruled that decedent's purported will dated 2003 complied with R.C. 2107.03.

## II. Law and Analysis

**Standard of Review**

{¶7} The Ohio Rules of Civil Procedure govern all aspects of a will contest action unless otherwise provided by law. *See* R.C. 2107.72(A). There is nothing in the Ohio Revised Code supplanting Civ.R. 56 in these proceedings, therefore, summary judgment is an appropriate

method by which to resolve a will contest. *Nelson v. Daniels*, 4th Dist. Lawrence No. 94 CA 29, 1995 Ohio App. LEXIS 3948, \*5 (Sept. 5, 1995). If summary judgment is granted in a will contest, the appellate court will review the judgment under a de novo standard. *Id.* at 6.

{¶8} Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1997).

{¶9} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. *Id.* at 293.

**Undue Influence**

{¶10} In her first assignment of error, Black contends that the trial court erred by granting Watson's motion for summary judgment because there were genuine issues of material fact as to whether Watson exerted undue influence over decedent.

{¶11} In order to show undue influence, the plaintiff must demonstrate: (1) a susceptible testator, (2) another's opportunity to exert influence, (3) the fact of improper influence exerted or attempted, and (4) the result showing the effect of such influence. *West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962). The mere existence of undue influence or an opportunity to

exercise it, even coupled with an interest or motive to do so, is not sufficient to invalidate a will. *Id.* Rather, the influence must be actually exerted in the mind of the testator with respect to the execution of the will at issue. *Id.* That is, it must be shown that the undue influence resulted in the making of testamentary dispositions that the testator otherwise would not have made. *Id.* Further, a claim of undue influence must be proven by clear and convincing evidence. *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 38 (8th Dist.).

{¶12} Watson submitted the following affidavits in support of her summary judgment motion: (1) her own, as executor of decedent's estate and the surviving spouse/sole beneficiary of his will; (2) David Riehl, decedent's attorney and preparer and witness to the execution of the 2003 will; and (3) Kelly Antel, f.k.a. Kelly Mullins, Riehl's legal assistant and a witness to the execution of the 2003 will.

{¶13} Watson averred in her affidavit that she and decedent met with Riehl on March 25, 2003, for the purposes of drafting and executing a healthcare power of attorney and living will for each of them. At the start of the meeting, decedent stated that he was also interested in he and Watson changing their existing wills to reflect that, upon the death of the first of them, the surviving spouse would solely inherit the deceased spouse's estate, and upon the death of the surviving spouse, the remainder of the estate would be equally divided between their respective children, Black and Pitkiewicz.

{¶14} Both Watson and Riehl averred that the March 2003 meeting was the first time decedent had discussed wanting to make changes to his will. Watson testified that decedent handled their finances and affairs.

{¶15} Both Watson and Riehl further averred that, in accordance with decedent's proposal,

Riehl drafted the wills, along with the living wills and healthcare powers of attorney. They averred that the documents were executed that same day, March 25, 2003, and the 1997 date on the third page of decedent's will was a typographical error that no one noticed before the document was executed. Further, Antel, Riehl's legal assistant, averred that she witnessed the execution of decedent's will on March 25, 2003, and that the year 1997 appeared on the last page of the will because she made the changes working off of the 1997 will and most likely inadvertently did not change the year.

{¶16} In opposition to Watson's summary judgment motion, Black submitted the following documentary evidence: (1) copies of the 1997 and 2003 wills; (2) an unnotarized affidavit of Watson that was attached to a pleading relative to Black's motion to dismiss Watson as executor of decedent's estate; (3) a communication regarding Watson's 2013 and 2014 tax returns; (4) excerpts from Watson's deposition testimony; (5) her own affidavit; (6) an affidavit of an attorney averring that at the time Antel witnessed the execution of decedent's 2003 will, Antel was not a commissioned notary; (7) a letter to Black written on behalf of Watson, dated July 8, 2013 (and its accompanying envelope postmarked July 9, 2013, both dates being after decedent had passed away) asking Black to call the writer about decedent; and (8) excerpts from Black's deposition testimony.

{¶17} Those documents, as relevant to the first assignment of error, establish the following. Black regarded decedent as a financially smart man and savvy business owner. However, in the years preceding his death, one of his businesses was unprofitable and he had a residence that had remained vacant. According to Black, this was evidence of decedent's diminished capacity.

{¶18} Black testified that although she was a nurse, she was not involved in caring for

decedent, and did not see or perceive anything with decedent that led her to believe that he had suffered with any emotional or psychological issues at the time he executed the 2003 will. She admitted that she could not speculate as to his emotional or psychological condition in 2003. Black further testified that she did not have any witnesses who would be able to testify as to decedent's mental capacity at the time he executed the 2003 will. She also admitted that she did not possess any documentation that would call into question decedent's mental capacity.

{¶19} Black averred in her affidavit that her and decedent's relationship had not changed, i.e., there were no fights or disagreements between them, between the time decedent executed the 1997 will and the 2003 will. Therefore, according to Black, it was not logical that decedent would have disinherited his only child.

{¶20} According to Black, the documentation she submitted also showed that Watson isolated decedent from family and friends in the year and a half prior to his death; did not see or communicate with decedent for three days after his final admission to the hospital; did not inform Black that decedent was in the hospital or had died until the day before his funeral; and concealed, destroyed, or mismanaged assets of the estate.

{¶21} On this record, the trial court properly found that Black failed to demonstrate that a genuine issue of material fact existed as to whether Watson exerted undue influence over decedent in his execution of the 2003 will. We agree with the trial court that decedent's arguably imprudent business and personal financial decisions, standing alone, are insufficient to demonstrate that he was a susceptible testator. The other documentation submitted by Black is not relevant to the issue at hand: whether decedent was a susceptible testator and whether Watson exerted undue influence over him to execute the 2003 will. Rather, the majority of the documentation submitted by Black relates to events that allegedly occurred well after the 2003

will was executed. Black, therefore, has also failed to demonstrate that there is a genuine issue as to whether Watson did in fact exert improper influence over decedent in regard to the execution of the 2003 will.

{¶22} In light of the above, the trial court properly granted summary judgment in favor of Watson against Black's claim of undue influence. The first assignment of error is therefore overruled.

**Will's Compliance with R.C. 2107.03**

{¶23} In her second assignment of error, Black contends that the will was not in compliance with the statutory requirements.

{¶24} R.C. 2107.03 governs the method of making a will and provides as follows:

Except oral wills, every will shall be in writing, but may be handwritten or typewritten. The will shall be signed at the end by the testator or by some other person in the testator's conscious presence and at the testator's express direction. The will shall be attested and subscribed in the conscious presence of the testator, by two or more competent witnesses, who saw the testator subscribe, or heard the testator acknowledge the testator's signature.

{¶25} "Attestation" and "subscription" to a will are two separate and distinct requirements for proper execution under R.C. 2107.03. *Jackson v. Estate of Henderson,* 8th Dist. Cuyahoga No. 93231, 2010-Ohio-3084, ¶ 18. Subscription is the physical act of affixing a signature for identification purposes. *Id.*, citing *In re Estate of Wachsmann,* 55 Ohio App.3d 265, 267, 563 N.E.2d 734 (8th Dist.1988), fn. 2. Attestation is the act by which the subscribing witnesses hear the testator acknowledge his or her signature or see him or her sign the document in their presence. *Johnson* at *id.*

{¶26} The will was signed by "Daniel W. Watson" and witnessed by "Kelly Mullins" (i.e., "Antel") and "David Riehl." Black acknowledges that there is no requirement that wills be notarized, but quotes this court's finding that a "*false* notary acknowledgment * * * is a factor to

be considered in making a will contest determination." (Emphasis added.) *Marshall v. Scalf*, 8th Dist. Cuyahoga No. 88708, 2007-Ohio-3667, ¶ 18. Black reasons that the "fact that the purported 2003 will * * * was defectively notarized by a person not having a valid notary commission raises but one more genuine issue of material fact to preclude summary judgment in this will contest action." Mullins, n.k.a. Antel, did not attempt to notarize the will, however. Rather, she signed as a witness. Therefore, there was no false notary acknowledgment in regard to the will.

{¶27} We further find that there was no false notary acknowledgment in regard to the affidavits of Watson, Riehl, and Antel, which Watson submitted in support of her summary judgment motion. Riehl, an attorney, notarized Watson's affidavit; Antel notarized Riehl's affidavit on April 30, 2015, a date that Black has not contended Antel's commission was expired;[2] and Antel's affidavit was notarized by a notary not involved in this case.

{¶28} Thus, the affidavits submitted by Watson in support of her motion were properly before the trial court, and established that the date of March 25, 1997, contained on the last page of the will, was a typographical mistake. The affidavits further indicate that decedent, with presence of mind and on his own accord, signed the will. Further, the affidavits establish that two competent people, Riehl and Antel, witnessed decedent execute the will. Black failed to demonstrate otherwise.

{¶29} In light of the above, the will complied with R.C. 2107.03, and Black's second assignment of error is therefore overruled.

{¶30} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

---

[2]According to Black, Antel's commission was expired from 1999-2004.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Probate Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

_____
LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR