[Cite as *Estate of Hand*, 2016-Ohio-7437.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

ESTATE OF: ERIC ANTHONY HAND, :
DECEASED                                            CASE NO.  CA2016-02-034
                                                    :
                                                            O P I N I O N
                                                    :       10/24/2016

                                                    :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PE14-10-0974


Katzman Logan Halper & Bennett, Steven D. Halper, 9000 Plainfield Road, Cincinnati, Ohio 45236, for appellant

Ginger S. Bock, P.O. Box 31122, Cincinnati, Ohio 45231, for appellant

Graydon Head & Ritchey LLP, Michael D. McNeil and Darren W. Ford, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, for appellee guardian

Catherine L. Evans, 9032 Union Centre Boulevard, Suite 200, West Chester, Ohio 45069, for appellee administrator


        **M. POWELL, P.J.**

        {¶ 1}  Appellant, Natalie Hand, appeals a decision of the Butler County Court of Common Pleas, Probate Division, denying her application to admit to probate the purported will of her husband, Eric Anthony Hand (Decedent).

        {¶ 2}  Appellant and Decedent were married in April 2014.  Decedent died on September 7, 2014.  He was survived by appellant and by his four minor children from a

previous marriage. Shannon Hand ("Hand") is the children's mother and Decedent's former spouse.

{¶ 3} In searching for a will, appellant discovered in a box of love letters she had received from Decedent over the years a three-page handwritten letter dated January 23, 2014 ("Love Letter Will"). Unlike Decedent's other love letters, this one was signed by Decedent with his full name. The letter included three paragraphs and a post-scriptum. The first two paragraphs professed Decedent's love for appellant; the last paragraph read as follows[1]:

> As my last will and testament, I appoint you the primary beneficiary of all I have and all I have worked for. With the complete trust that you will look after the children, my business interests and all the other things that I have put together over the years and not let anyone try to deprive you of those things.
>
> I love you eternally,
> ERIC ANTHONY HAND
> s/ Eric Anthony Hand

{¶ 4} Subsequently, appellant discovered atop a tall bookcase in Decedent's office a draft titled "The Last Will and Testament of Eric Hand," which Decedent had prepared through LegalZoom.com, an online digital forms company ("LegalZoom Will"). The LegalZoom Will was unsigned. It left 52 percent of Decedent's estate to appellant and 48 percent of his estate to his four children. The record indicates Decedent paid LegalZoom and prepared the LegalZoom Will the day before he wrote the Love Letter Will.

{¶ 5} Appellant initially sought to admit the Love Letter Will to probate as a lost, spoliated, or destroyed will. Hand objected to appellant's application on behalf of Decedent's children. Finding the Love Letter Will to be an original document, the probate court ordered

---

1. The post-scriptum is not relevant to this appeal and provided: "At some point, I would very much like us to bring Mark to court for his extortion of control leveraged by very real threats of blackmail, dis-incorporation of the businesses (to be later re-instituted as his sole entity)."

- 2 -

appellant to submit a new application. Appellant did so on December 11, 2014. The probate court issued an interlocutory order denying admission of the Love Letter Will to probate and set the matter for a hearing. The hearing was held in October 2015.

{¶ 6} At the hearing, appellant submitted the testimony of two friends, Angela Lester and Frances Boon. Both women originally claimed they had witnessed Decedent sign the Love Letter Will at his home on January 23, 2014. However, it was established that Boon could not have witnessed the event on January 23, 2014, because she was in Indiana that day and did not arrive at Decedent's home until the next day. Both women subsequently changed their testimony and asserted they had witnessed Decedent sign the Love Letter Will at a later time in January 2014. Both women had a different recollection as to where in the house they had witnessed Decedent sign the Love Letter Will. Neither Boon nor Lester signed the Love Letter Will as witnesses. Neither Boon nor Lester remembered the Love Letter Will when Decedent died.

{¶ 7} Appellant testified that after Decedent signed the Love Letter Will, he gave it to her and told her "what it was." Appellant took it upstairs and put it in the box with the other love letters. Later that evening, Decedent told her he was going to prepare a LegalZoom document. Lester testified that when Decedent called her and Boon into the room, "he explained to us that this was his will and he would get it legally done at a later date."

{¶ 8} On January 21, 2015, the probate court denied appellant's application to admit the Love Letter Will to probate. The probate court found that the purported will could not be admitted to probate under R.C. 2107.03 or 2107.181 because it was not signed by Boon and Lester. The probate court further found that the purported will could not be admitted to probate under R.C. 2107.24 because while there was clear and convincing evidence Decedent prepared the Love Letter Will and signed it in the presence of Boon and Lester, there was no clear and convincing evidence Decedent "intended the three page hand-printed

- 3 -

document to constitute his will."

{¶ 9} Appellant now appeals, raising one assignment of error:

{¶ 10} THE TRIAL COURT ERRED BY FINDING THAT ERIC ANTHONY HAND DID NOT INTEND FOR THE WILL TO CONSTITUTE HIS LAST WILL AND TESTAMENT.

{¶ 11} Appellant argues the probate court erred in denying her application to admit the Love Letter Will to probate under R.C. 2107.24. Appellant first asserts that Decedent's testamentary intent, that is, whether he intended the document to be his will, is a question of law which we must review de novo. Appellant further asserts that contrary to the probate court's finding, the Love Letter Will clearly and convincingly shows Decedent's testamentary intent.

{¶ 12} In Ohio, a will must meet certain statutory requirements before it can be admitted to probate. *In re Estate of Pittson*, 5th Dist. Stark No. 2008 CA 00014, 2009-Ohio-1862, ¶ 11. In order to be valid, a will must be (1) in writing, (2) signed at the end by the testator or by some other person in the testator's conscious presence and at the testator's express direction, and (3) attested and subscribed in the conscious presence of the testator by two or more competent witnesses who saw the testator subscribe or heard the testator acknowledge the testator's signature. R.C. 2107.03.

{¶ 13} Attestation and subscription to a will are two separate and distinct requirements for proper execution under R.C. 2107.03. *Black v. Watson*, 8th Dist. Cuyahoga No. 103600, 2016-Ohio-1470, ¶ 25. Subscription is the physical act of affixing a signature for identification purposes. *Id.* Attestation is the act by which the subscribing witnesses hear the testator acknowledge his or her signature or see him or her sign the document in their presence. *Id.* Because the Love Letter Will was only signed by Decedent, it did not comply with R.C. 2107.03.

{¶ 14} Pursuant to R.C. 2107.24, if a will does not comply with R.C. 2107.03, the

document shall be treated as if it had been executed in compliance with R.C. 2107.03 only if the proponent of the document proves by clear and convincing evidence at a hearing that the decedent (1) prepared the document, (2) signed the document and intended it to be his will, and (3) signed the document in the conscious presence of two or more witnesses. R.C. 2107.24(A)(1)-(3).

{¶ 15} Appellant first argues that whether Decedent intended the Love Letter Will to be his will involves a review of the purported will and is thus a question of law which we must review de novo. In support of her argument, appellant cites *Summers v. Summers*, 121 Ohio App.3d 263 (4th Dist.1997); *Vaughn v. Huntington Natl. Bank Trust Div.*, 5th Dist. Tuscarawas No. 2008 AP 03 0023, 2009-Ohio-598; and *In re Estate of Baker*, 9th Dist. Lorain No. 07CA009113, 2007-Ohio-6549.

{¶ 16} These cases are not applicable as they all dealt with the interpretation of wills that had been already admitted to probate. The issue here is not what the Love Letter Will means, but whether Decedent intended it as his last will and testament. In other words, the contents of the document are not examined for the purpose of construing its provisions. Rather, its provisions are relevant only for the purpose of determining the decedent's testamentary intent. *In re Crowe's Will*, 31 Ohio Law Abs. 35, 40 (P.C.1940). The determination of a testator's intention after a will is probated "is not the same thing as testamentary intent, that is, animus testandi. If there is no animus testandi, then the instrument is not a will, is not entitled to probate, and the question of construing the intention of the testator never arises." *In re Estate of McIntosh*, 1st Dist. Hamilton No. C-75556, 1976 WL 189970, *2 (June 7, 1976).

{¶ 17} Appellant also cites *Jackson v. Estate of Henderson*, 8th Dist. Cuyahoga No. 93231, 2010-Ohio-3084, in support of her argument. Specifically, appellant asserts that because the Eighth Appellate District de novo reviewed a probate court's denial of an

application to admit a will to probate under R.C. 2107.03, the same de novo standard of review applies to the denial of an application to admit a will to probate under R.C. 2107.24. Appellant misconstrues the holding in *Jackson.*

{¶ 18} In *Jackson*, Faith Jackson sought to admit the purported will of her aunt to probate. The probate court denied admission of the will to probate on the ground Jackson failed to prove by clear and convincing evidence that her aunt intended the document to be her will. On appeal, Jackson argued the probate court erred in applying a clear and convincing evidence standard under R.C. 2107.24. The Eighth Appellate District agreed, stating: "since the purported will was executed in compliance with R.C. 2107.03, we agree with Jackson that the clear and convincing evidence standard was not required." *Id.* at ¶ 25.

{¶ 19} Because the Eighth Appellate District applied a de novo standard in reviewing the probate court's decision, appellant claims this establishes that determination of testamentary intent is subject to a de novo standard of review, whether under R.C. 2107.03 or 2107.24. However, the appellate court did not apply a de novo review to the probate court's determination that there was lack of testamentary intent. Rather, the appellate court determined that a decision to admit a document to probate under R.C. 2107.03 is limited to a determination of whether the formalities for the execution of the will have been observed. *Jackson*, 2010-Ohio-3084 at ¶ 27 (when reviewing a decision denying admission of a will to probate, appellate court has the same function as the probate court, that is, to determine whether a prima facie case has been made for the validity of the execution of the will. Thus, appellate review is de novo). The appellate court found that the probate court's inquiry into whether there was testamentary intent was not appropriate at the admission to probate stage:

> We note that "[i]n admitting a will to probate, however, the probate court does not rule on the validity of the contents of the will. It merely establishes that the will was validly executed."

> Thus, finding that Jackson made a prima facie case that the purported will was in compliance with R.C. 2107.03 does not mean that it cannot be subsequently challenged in a will contest action. A "will contest action raises the single and ultimate issue whether the writing produced is the last will * * * of the testator."

(Citations omitted.) *Id.* at ¶ 30.

{¶ 20} In the instant case, there is no question that the Love Letter Will did not satisfy the formalities for a will required under R.C. 2107.03. Therefore, R.C. 2107.24 provides for a factual inquiry into threshold requirements for admission to probate which are entirely different from those specified by R.C. 2107.03. Among other factors, R.C. 2107.24 requires the probate court to determine if the decedent intended the document to constitute his will. Such an inquiry does not involve an interpretation of what the provisions of the document mean. And while the provisions of the document are relevant in determining whether the decedent intended the document to constitute his will, the inquiry, as in this case, is much broader.

{¶ 21} We therefore decline to apply a de novo standard of review to the probate court's denial of appellant's application to admit the Love Letter Will to probate under R.C. 2107.24, and instead review the probate court's denial under a manifest weight of the evidence standard. *In re Estate of Pittson*, 2009-Ohio-1862.

{¶ 22} In *In re Estate of Pittson*, the decedent's son sought to admit his father's will to probate. The probate court found that the will did not meet the statutory requirements of R.C. 2107.03 as it was only signed by one witness. Following a hearing held pursuant to R.C. 2107.24, the probate court found the will did not meet the statutory requirements of R.C. 2107.24 and denied admission of the will to probate. On appeal, the decedent's son challenged the probate court's denial as being against the manifest weight of the evidence.

{¶ 23} In upholding the probate court's denial, the Fifth Appellate District noted the difference between a probate court's function in determining whether to admit a will to

probate under R.C. 2107.03 and 2107.24. Specifically, the appellate court observed that in proceedings under R.C. 2107.03 and 2107.18, "the Probate Court does not have the discretion to weigh the evidence, but merely considers the evidence favorable to the will's validity to determine as a matter of law whether a prima facie case had been made for admission." *In re Estate of Pittson*, 2009-Ohio-1862 at ¶ 18. However, in proceedings under R.C. 2107.24, "the probate court's discretion to weigh the evidence [is] not limited, and the trial court [is] obligated to act as a trier of fact." *Id.* at ¶ 19. In such an instance, a manifest weight of the evidence standard applies. *Id.* at ¶ 21. *See also In re Jordan*, 4th Dist. Pike No. 08CA773, 2008-Ohio-4385 (reviewing a probate court's decision to probate a will, which failed to comply with R.C. 2107.03 but met the requirements under R.C. 2107.24, under a manifest weight of the evidence standard, and referring to the probate court's factual finding that the decedent intended the document to be his will).

**{¶ 24}** Appellant next argues the probate court erred in denying admission of the Love Letter Will to probate under R.C. 2107.24. Appellant asserts that the language used in the last paragraph of the Love Letter Will clearly and convincingly shows Decedent intended the document to be his will because Decedent used the words "As my last will and testament," named appellant as a beneficiary to his will and described what he wanted to leave her, both printed and signed his full name, and asked two persons to witness him sign the document. Appellant further asserts the probate court erroneously considered extrinsic evidence in determining Decedent's testamentary intent.

**{¶ 25}** The probate court denied admission of the Love Letter Will to probate, finding there was no clear and convincing evidence Decedent intended the three-page handwritten document to constitute his will. In so ruling, the probate court observed that (1) none of the three pages of the document have a title; (2) while the last paragraph includes the terms "last will and testament" and "appoint," it does not include "give," "devise," or "bequeath," terms

customarily used in wills; (3) although not legally required, the document does not have an exordium and/or a testimonium clause; and (4) by contrast, the LegalZoom Will Decedent prepared the day before he wrote the Love Letter Will includes both an exordium and testimonium clause.[2]

{¶ 26} The probate court further found that Decedent "was somewhat familiar with how a formally drafted will appeared" based upon his unsigned LegalZoom Will, the Love Letter Will "was consistent in style and content with the many other 'love notes' written by [Decedent] to [appellant]," and the last paragraph of the Love Letter Will was subject to different interpretations as to the intent of Decedent. The probate court concluded that this uncertainty resulted in a lack of clear and convincing evidence as to Decedent's testamentary intent in preparing the Love Letter Will.

{¶ 27} It is well-established that one of the requirements of a valid will is that it be executed with testamentary intent, that is, disposition of property to take effect only at death. *In re Rosenbaum Trust*, 8th Dist. Cuyahoga No. 81213, 2003-Ohio-1830, ¶ 11. "Although a will cannot be established merely by showing an intent to make one, an instrument cannot be a will unless [testamentary intent] exists." *In re Will of Mielke*, 3d Dist. Paulding No. 11-76-5, 1977 WL 199309, *3 (June 30, 1977). The test is whether the instrument expresses the final testamentary purpose of the testator. *In re Crowe's Will*, 31 Ohio Law Abs. at 40.

{¶ 28} As stated above, we review the probate court's decision under a manifest weight of the evidence standard:

> The standard of review for weight of the evidence issues, even where the burden of proof is "clear and convincing," retains its focus upon the existence of "some competent, credible evidence." We will not reverse a trial court's decision as being against the manifest weight of the evidence if some competent,

---

2. In a will, the exordium clause, also known as the introductory clause, usually contains statements of the testator's name and capacity to make the will; the testimonium clause is a provision reciting the date when the will was signed, and in what capacity. *Blacks' Law Dictionary* 616, 1514 (8th Ed.2004)

credible evidence supports it. This standard of review is highly deferential and "some" evidence is sufficient to sustain the judgment and prevent a reversal. This is true even where the burden of proof at trial * * * must satisfy the "clear and convincing" standard. Moreover, we presume that the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony.

(Citations omitted.) *In re Jordan*, 2008-Ohio-4385 at ¶ 9.

**{¶ 29}** Appellant cites *In re Jordan* in support of her argument that the last paragraph of the Love Letter Will clearly and convincingly showed Decedent's testamentary intent. In that case, the decedent's will stated in its entirety: "November 27, 2006. I, John E. Jordan, on this date I will everything: properties, monies to granddaughter Erica K. Jordan." Appellant asserts that "although the issue in that appeal was whether two people had witnessed the decedent's signature, because the trial court ordered that the will be admitted to probate [under R.C. 2107.24], the trial court necessarily found that this simple language showed testamentary intent."

**{¶ 30}** We find that *In re Jordan* does not support appellant's assertion. The only issue on appeal in that case was whether two witnesses had seen the decedent sign the will. Because the decedent's testamentary intent in executing the document was not an issue on appeal, we are unable to discern whether the issue was litigated in the probate court, and, if so, what evidence the probate court may have heard on this issue. In addition, there is a major factual distinction between *In re Jordan* where the purported will and the single sentence were one and the same, and the case here where the purported will is a single, run-on sentence included in a love letter.

**{¶ 31}** Appellant also challenges the probate court's consideration of extrinsic evidence in determining Decedent's testamentary intent, and cites two decisions for the proposition that "[a] will must show testamentary intent on the four corners of the document

itself, and evidence of statements, circumstances, or events dehors the instrument may be used by the court to clarify or resolve any ambiguity and meaning, but cannot be utilized to add something to the document which is not there." *In re Estate of Tyus*, 5th Dist. Stark No. 2006CA00348, 2007-Ohio-5814, ¶ 10; *In re Estate of Ike*, 7 Ohio App.3d 87 (3d Dist.1982).

{¶ 32} *In re Estate of Tyus* involved a one-page document offered for probate as a will. The probate court made no findings as to whether the document met the requirements of R.C. 2107.24, and the appeal considered the matter pursuant to R.C. 2107.18. *In re Estate of Ike* involved an Ohio warranty deed offered for probate as a will. The appellate court and seemingly the probate court considered the matter pursuant to R.C. 2107.03, and not R.C. 2107.24. Those decisions are therefore not applicable.

{¶ 33} We further note the distinction between a will admitted to probate pursuant to R.C. 2107.18 and a purported will offered for probate pursuant to R.C. 2107.24. Appellant is correct that in the former situation, the decedent's testamentary intent, that is, how he intends to dispose of his property and to whom, is determined from the four corners of the will. *See Martin v. Summers*, 101 Ohio App.3d 269 (12th Dist.1995) (in any action seeking construction of a will, the court's sole purpose is to ascertain and carry out the intention of the testator, which must be ascertained from the words contained in the will).

{¶ 34} By contrast, when a purported will is offered for probate, R.C. 2107.24 requires the probate court to hold a hearing and find by clear and convincing evidence that the decedent "intended the document to constitute [his] will." By requiring the court to conduct a hearing, R.C. 2107.24 necessarily requires the court to receive extrinsic evidence and weigh that evidence in determining the decedent's testamentary intent. Establishing that a particular document was intended as a decedent's will under R.C.2107.24 is a different inquiry from whether the document evidences a disposition of property to take effect only upon the testator's death. While this distinction may be slight, it is significant and involves a

broader inquiry, including extrinsic evidence.

{¶ 35} Upon reviewing the record, we find that some credible, competent evidence supports the probate court's finding that appellant failed to prove by clear and convincing evidence that Decedent intended the Love Letter Will to be his will.

{¶ 36} The only language suggestive of a testamentary intent is found in the last paragraph of the Love Letter Will. The other two paragraphs profess Decedent's love for appellant as he had done many times before. Viewed as a whole, the Love Letter Will is consistent in style and content with the other love letters Decedent had written to appellant and reflects their emotional relationship and its highs and lows. In fact, appellant testified at the hearing that the Love Letter Will was Decedent's way of letting her know that he loved her and that their relationship was solid and forever. Appellant stored the Love Letter Will with the other love letters because "to [her] it was kind of like a love letter."

{¶ 37} The day before Decedent wrote the Love Letter Will, he prepared a detailed will via LegalZoom, complete with exordium and testimonium clauses. Decedent was thus somewhat familiar with how a will is generally drafted formally. By contrast, the last paragraph in the Love Letter Will is written in a simple and broad manner. In addition, both appellant and Lester testified that after Decedent wrote the Love Letter Will, he told both of them he was going to legally create a will at a later date. "To make a testamentary paper valid, the writer must have intended it as a will, as it stood, without further act, on his part, to complete it." *In re Crowe's Will*, 31 Law Abs. at 41.

{¶ 38} Given Decedent's familiarity with the formalities of a will, the similarity of the Love Letter Will to the other love letters Decedent wrote to appellant, and the fact that after he wrote and signed the Love Letter Will, Decedent told appellant and Lester he was going to legally create a will at a later date, we find that credible, competent evidence supports the probate court's finding that there is no clear and convincing evidence Decedent intended the

Love Letter Will to be his will. The probate court, therefore, properly denied appellant's application to admit the Love Letter Will to probate.

{¶ 39} Appellant's assignment of error is overruled.

{¶ 40} In an effort to defend the probate court's judgment denying appellant's application to admit the Love Letter Will to probate, Hand raises the following cross-assignment of error pursuant to R.C. 2505.22 and App.R. 3(C)(2):

{¶ 41} THE PROBATE COURT'S ORDER DENYING ADMISSION MAY ALSO BE AFFIRMED ON THE GROUND THAT THE PROBATE COURT ERRED IN FINDING THAT [APPELLANT] HAD PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT THE DECEDENT EXECUTED THE DOCUMENT IN THE CONSCIOUS PRESENCE OF TWO OR MORE WITNESSES.

{¶ 42} Under App.R. 3(C)(2), an appellee is not required to file a cross-appeal if he or she seeks to defend a trial court's judgment on grounds rejected or not considered by the trial court. *McCarthy v. Sterling Chems., Inc.*, 1st Dist. Hamilton Nos. C-110805 and C-110856, 2012-Ohio-5211, ¶ 9-10. R.C. 2505.22 provides that "[i]n connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part." Such cross-assignments of error, however, may be considered only for the limited purpose of preventing the reversal of a judgment under review. *Chapman v. Ohio State Dental Bd.*, 33 Ohio App.3d 324, 327 (9th Dist.1986). Because we affirm the probate court's decision, we need not consider Hand's cross-assignment of error. *Parton v. Weilnau*, 169 Ohio St. 145, 171 (1959).

{¶ 43} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.